Thank you, Your Honor. I appreciate your time and attention. All right. Thanks to both counsels. The case is taken under advisement. The court will proceed to the third case, Abrego v. Shulkin, Secretary of Veterans Affairs. Mr. Smith. Yes, sir. May it please the court. I am Michael Smith, and I represent the appellant against the Veterans Administration. Basically, he has brought a six-count discrimination case against them. He was working for the VA as a dental assistant. He was the only male. He was the only Hispanic. And he also had been a veteran. Everything for him started out in 2011 when he started working for Dr. Stampy. That's where everything started generating for him that he was being treated differently because of his sex and his race, because of the fact that the doctor actually preferred to interact with female assistants rather than himself. So generally he found that he was not having the working conditions that female assistants had been dealt with. One of the things about my client is that basically while working for the VA, he became, if you see something, say something, where if he didn't agree with the way he thought the conditions of employment were, he would actually bring forth those particular complaints to manage. Now, the other thing unusual about this particular case, which I have not had in too many other cases, is that in the determination by the court to grant the summary judgment, the court actually looked at, in particular, the statement of additional facts by the defendant, which actually listed numerous facts that the plaintiff had with their final agency decision about the different ways that they were being treated, that he was being treated, which ultimately created, I felt, a tremendous amount of material disputes. The issue is the court did analyze many of the facts in the statement of additional facts by the defendant. However, it didn't look like he basically looked at some of the things that were explanations of the facts that the judge analyzed for the defendant, where he felt that the facts weren't supported for the plaintiff. In particular, he basically can identify that one of the major ones that the court seemed to look at was the temperament of my client or his expectations, where he looked at one of the major issues seen to be the short temper, where the judge seemed to feel that that was some issue. Well, if you just took the fact of the way it was laid out by the defendant, well, there was a short, concise statement. However, within the statement of additional facts by the plaintiff, it also explained out some of the reasons that he felt it was short tempered. One of them was not being able to use a computer, which just says, okay, so what, he's short tempered because of the computer? Well, let's analyze that, and what it is is, hey, he didn't get to do one of the parts of his job, is to schedule appointments. So he's got a duty, and he's trying to do that duty, and his supervisor dentist, Dr. Stampy, is obviously impairing his ability to learn or to get involved in this, which is part of his growing, because he was on probation. The other was short tempered basically because he, in the operating room, which they just didn't follow up on a fuller explanation, was that he basically didn't know how to do an x-ray. Now, when we look at the fact of short tempered, which I think was spelled out by the court as being a decision, it would look to one, when a person goes to work, they look for some kind of demeanor between themselves and their supervisor that's going to help them look forward to coming to work. I believe that if you are in a situation and you're going to work and all of a sudden you dread being there, it's going to affect your performance, which in this case, to some extent, it would, because when a client wasn't getting the treatment that he'd like, he would complain about it. He actually then files an EEO complaining about the treatment, that females are treated better, that he's not being subjected to proper working conditions. And then there seems to be a plan of doing what they call an LOI, Letter of Inquiry. Basically that is the steps towards moving out of the organization. The Letter of Inquiry that caused him his demise was basically he hadn't put away some operating or surplus clothing, and when he was questioned about it, he said he'd actually been taking care of patients. So basically he gave an extensive idea of why he didn't feel that it was proper to get the LOI, but basically they didn't care, and that wound up causing his removal. But again, throughout the complaint that the judge had looked at, there were plenty of material disputes that I think that this court, by analyzing our statement of additional facts and looking at the facts that it's unusual to have a court actually pull in all of the facts that were alleged in a final agency decision into its own order and actually purbate them, uses the same statement of facts from the defendant, which I found completely unusual. Thank you. The other thing is that females were taken on ward examinations and a client wasn't, and it seems like that is an important issue of why. Why wouldn't he be taken to a ward visit? I mean, I could go through some of the facts that the court had actually gone over. I mean, part of the deal is, according to our fact two, it's in there that basically he was told because of his attitude, which is reporting the bad conduct, is he could be terminated for it. Mr. Smith, rather than go through all your evidence, can I just ask you, what are the one or two pieces of evidence that you think most clearly show discrimination on the basis of ethnicity or gender? I'd say that the failure to take him on the ward visits, failure to allow him to go to training, I think those are some key elements. Why do you attribute that to impermissible discrimination? Because if you're taking and allowing somebody a better opportunity in employment to learn the positions of dental assistant, and especially when you're on probation, it's certainly impairing your abilities to get the quality that you're being instructed that you're responsible for. Perhaps, but why do you draw the inference that it's on the basis of race or ethnicity or gender? Because obviously a female and who's non-Hispanic. In which individual do you have in mind? That was at Vail? Pardon me? Vail. I think the court noted that as a comparable. Yeah, Audrey Vailis? Yes. Vails, okay. Iran, I believe that it's the responsibility of anybody in a supervision to make the conditions of employment promote the one to learn their position and also to assist them, like if he doesn't feel his conditions of employment are correct and he's complaining about some of the conditions that I'm explaining to the court and they take offense to it, that certainly inhibits the person's ability to want to speak out. Perhaps, but your client is complaining, is he not, against the backdrop of a record at the same point in time that shows insubordination?  I mean, at one point didn't he tape record his supervisor in January of 2014 and the VA found that that's an act of insubordination? They said that's an act of insubordination, but there's nothing that shows that he knew that there was against being able to record that. And again, just advising the court. He's tape recording the medical advice, right? Excuse me? He's tape recording a conversation between a doctor and a patient. And I'm assuming that part of that is concerning himself too. Or, again, maybe it could become a whistleblower situation. It could become that he thinks there's an offensive thing that's taking place that's against the patient's own interest. And maybe it could be that he believes that that could be a point that he believes down the road he may have to assist that particular patient for whatever may have been an aggrievance that he saw. Mr. Smith, do you want to reserve some time for rebuttal? Yes. Thank you for that. I don't want to cut you off. No, no, no. I was just making sure he was answering questions. Thank you. Ms. Flannery. May it please the Court. Counsel. Alfredo Obrego was hired at the VA in June 2011 to work as a dental assistant. For the next three and a half years, he demonstrated his complete inability to get along with his supervisors, multiple supervisors, his coworkers, and at times patients. Within eight weeks of him being hired, he was warned that he could be terminated for not getting along well with others. He had a meeting with two of his supervisors, Dr. William Strampi and Dr. Peter Bidney, to discuss his behavior. And during that meeting, he yelled, he interrupted, and he stormed out. His first review, which was within three months of being hired, he was told that he had lost his composure multiple times and that he had a hard time and was resistant to direction. Dr. Strampi testified that there was one particular incident in which Mr. Obrego got so upset that he refused to speak with Dr. Strampi for three days. When a dental assistant won't speak with his dentist for three days, that affects patient care. In 2012, Mr. Obrego received a letter of counseling. It indicated that he had repeatedly interrupted Dr. Strampi. It also indicated that he had an argument with a patient. The patient was laying in his chair. Mr. Obrego got angry. Mr. Obrego was clenching his fist, increasingly more angry. He then later refused to work with the patient, and he also labeled the patient a problem patient. The letter of counseling also indicated that he had an incident in which he shouted at a coworker. Within nine months of Mr. Obrego being hired at the VA, Dr. Strampi testified that Dr. Strampi attempted to resign twice because he could not work with Mr. Obrego, and the working situation had gotten so stressful for Dr. Strampi. By late 2012, Mr. Obrego received a letter of inquiry, which indicated that he had made inappropriate sexual remarks to coworkers. In the letter of inquiry, it also indicated that he had made unwelcome and aggressive remarks to a coworker during a meeting. Once again, he was also reprimanded for yelling at a coworker. And as Your Honor pointed out, in January of 2014, he received a 14-day suspension for illegally recording Dr. Peter Bidney. By mid-2014, Dr. Strampi was no longer his supervisor, and he had a new supervisor, Ms. Carrie Piatcik. This was his opportunity to right the ship, maybe make better decisions about his behavior at work, but things continued to go wrong. There was one incident in which he started yelling at Ms. Piatcik. Ms. Piatcik said, can you please keep your voice down? And he said, you haven't heard me yell yet. Another interaction was during dental assistant meetings where there was multiple dental assistants. During one meeting, he started yelling. He told Ms. Piatcik that she didn't know how to do her job, and she kept interrupting. In another meeting, he yelled once again that she couldn't do her job, that she shouldn't be a supervisor. It became so bad, and the meeting became so ineffective, that Ms. Piatcik had to terminate the meeting early. The problems with co-workers also continued. Two female co-workers reported that they felt that he had been threatening towards them. Another female co-worker reported that she didn't feel comfortable being in the same room alone with Mr. Obrego, and she didn't want to be left alone. Ultimately, Mr. Obrego was terminated in 2014, not because, as Appellant's Counsel points out, because he failed to put linens away. That was one reason why he was terminated. But more importantly, the reasons why he was terminated was because of this disrespectful conduct towards his supervisor, Ms. Piatcik. Multiple instances of this disrespectful conduct. Following his termination, he brought suit for race discrimination and gender discrimination, a hostile work environment, and retaliation. However, the District Court properly granted summary judgment in favor of the VA, concluding that his claims were based on pure speculation, and that he was unable to come forward with any evidence whatsoever that he was the subject of discrimination, a hostile work environment, or retaliation. As a preliminary matter, Your Honors, Counts 4 and 5 of the complaint have been waived. Plaintiff failed to exhaust those at the administrative stage. They waived them at the District Court level by not addressing our arguments about waiver and exhaustion, and he hasn't brought them up in the appellate briefs. Next, my litany of discussion of this wrongdoing demonstrates two specific reasons why he cannot prevail on his claims. First, he can't identify a single individual who was similarly situated outside of his protected class and yet treated more favorably. He identified six individuals, but these individuals did not engage in the wrongdoing that Mr. Obrego engaged in. And further, he didn't come forward with any evidence whatsoever that these individuals were actually treated more favorably. Once again, it was based on pure speculation. Another reason why Mr. Obrego cannot prevail on his claims is that he cannot demonstrate that the articulated reasons for the VA's actions were lie or pretext for discrimination. Mr. Obrego admitted to recording his supervisor that this is illegal, and he was suspended for that. He was also terminated because of these instances of disrespectful behavior. Finally, plaintiff has put forward no evidence whatsoever of a hostile work environment. He complains that he couldn't go on training when, in fact, the training was full. He complains that his bosses were mean to him or made petty remarks. This isn't a hostile work environment. It's not severe. It's not pervasive. It's not threatening. It's simply just not abusive. Finally, the district court properly determined that Mr. Obrego cannot demonstrate retaliation because there's no causal connection between the EEO complaints and the materially adverse actions. Simply put, Mr. Obrego presented the district court with zero evidence beyond his pure speculation and baseless assertions to support his claims of race and gender discrimination, retaliation, and a hostile work environment. And unless the court has any further questions, we ask that you affirm the district court's ruling. All right. Thank you, Ms. Flannery. Mr. Schmidt. I think one of the points that the major points that she began, that the counsel began with, was the not getting along with Dr. Stampi and the something about that he was quiet for a period of time. Well, that was within our statement of additional facts also is that he is an employee by that patient that we, I believe, is involved in this particular issue, actually called my client retarded. Now, he took great offense to that, and Dr. Stampi was basically there and didn't protect him. And basically because of that, rather than argue as they're trying to portray him as some boisterous person, he just put it inside, he became quiet, and he moved on. And they're trying to hold that against him. I think that's proper conduct. But the judge didn't look at that part of it. The judge only looked at he was quiet. So that's like a material dispute within itself. As far as not getting along with people, as I've said so far, there's no secret that my client, if he sees something, if he sees a problem, he points it out. He brings forth any kind of issue, whether somebody likes it or not, to indicate his displeasure about what particularly is going on, whether it be a patient or be the doctor himself, which I think is expected. You're not supposed to keep your mouth shut and move on. I think the job is to inform somebody that if you aren't being treated right or if the patient's not being treated right or if the patient himself is acting up, he has a duty to say something. Just because it's a patient doesn't mean the patient's right all the time. It doesn't mean the patient can be obnoxious. It shouldn't mean that the patient has more credibility than the person that's working for the VA. As far as the new supervisor, well, by the time a new supervisor comes on with Dr. Stampy, he's already filed a couple EEO complaints that have followed him right to this point. He's not going to be a very light person by the next supervisor that comes in. As far as the co-workers, again, I'm just saying that if he sees something he doesn't like, he says something. As far as, since my time's starting to go, I'd like to at least hit one important issue of apparent problem that I think the judge had in his final ruling in regards to the retaliation issue where the judge did look at the time frame between an EEO and an adverse employment action. The judge did look at the EEO adverse employment action for the third LOI letter of inquiry, and in his statement on page 18 of his opinion, he looked at the period of time between October 3rd, 2014 and November 19th, 2014 on a proposed removal, and he found that just a seven-week difference was not that significant. I would think that it is significant. He did look at the prior one where it was two years. Okay, fine. But now we're looking at one that's seven, and he thinks it's insignificant to be able to go to a jury with regards to that. All right. Thank you. Thank you, Mr. Smith. Ms. Flannery.